UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWIGHT M. DeBOSE,<br><br>    Plaintiff,<br><br>  v.<br><br>WILLIAM MOORE; et al.,<br><br>    Defendants.<br>_____/ | No. C 05-3948 MHP (pr)<br><br>**ORDER GRANTING SUMMARY JUDGMENT FOR SATHER AND DISMISSING ACTION AS TO UNSERVED DEFENDANT** |

## INTRODUCTION

Dwight M. DeBose filed this civil rights action under 42 U.S.C. § 1983. This case is now before the court for consideration of defendant Sather's motion for summary judgment as well as to deal with problems related to an unserved defendant. For the reasons discussed below, defendant Sather's motion for summary judgment will be granted, a discovery motion will be denied and the unserved defendant will be dismissed.

## BACKGROUND

The following facts are undisputed unless otherwise noted:

The incidents that gave rise to the complaint occurred in May - December 2001. At the relevant time, Dwight DeBose was an inmate at the Correctional Training Facility ("CTF") in Soledad and Kyle Sather was the chief dental officer at CTF.

The procedure for obtaining dental care at CTF depended on whether it was routine or emergency dental work. Routine dental treatment could be requested by an inmate by filling out a CTF 304 multi-purpose form requesting to be seen by a dentist. The inmate requesting care would be put on a list and seen in order, following the other inmates already on the list.

Emergency dental treatment could be obtained by going to the sick-call line and being referred to the dental department. If the inmate had a routine dental matter, he would not be treated through the sick-call line, according to Dr. Sather. There is no evidence that DeBose was unaware of this two-track system for dental care or of the CTF 304 multi-purpose form.

If an inmate was dissatisfied with dental services, he could complain via the inmate appeal system. The inmate could file a CDC-602 inmate appeal to complain about the dental treatment received or the lack of dental services.

A filling fell out of one of DeBose's teeth and caused him pain on or before May 8, 2001. He went to the sick call window at 7:00 a.m. on May 8, 2001. The nurse at the sick call window wrote a pass for him and sent him to the infirmary. (The pass stated "filling fell off," and did not mention any pain. See Young Decl., Exh. E, p. AGO-016.) At the infirmary, DeBose informed an inmate worker that a filling had fallen out and he needed to see a dentist. Dental assistant William Moore asked DeBose whether he wanted the tooth pulled; DeBose responded that he did not but did want to see a dentist. Dental assistant Moore told him that "all we do on sick call is pull teeth." Complaint, p. 3. DeBose told Moore that he needed to see a dentist to get examined and make the best informed decision about his tooth. Moore told DeBose, "I guess you won't be seeing anybody," and left. Id. DeBose waited for about two hours and eventually learned from the inmate worker that he was not going to be seen by a dentist and that Moore had returned his file to the shelf. DeBose saw dental assistant Moore again and asked Moore whether he was going to seen by a dentist, Moore said "no" and eventually returned DeBose's signed pass to DeBose.

The parties disagreed about whether DeBose called Dr. Sather about his dental needs. DeBose stated in his verified complaint that he called Dr. Sather that day (i.e., May 8) to complain about Moore's unprofessional attitude and that he was in pain and needed to see a dentist as soon as possible to get his tooth fixed. DeBose further stated that Dr. Sather told him he would look into the situation and get him in to see a dentist as soon as possible. DeBose stated that he called Dr. Sather "several" times over the next several months on unidentified dates but did not get to see a dentist until seven months later. DeBose stated in

1  his complaint that "[d]uring the seven (7) months of calling Dr. Sather I repeatedly told him
2  of the fact I'd filed (sic) out all the necessary paperwork on the day in question." Complaint,
3  p. 5. He also stated in several places that he filled out one request form on May 8. In his
4  inmate appeal he wrote that he had filled out a co-payment form on May 8 that some
5  unidentified person said was the form used to schedule appointments.

6  (Dr. Sather, on the other hand, stated in his declaration that he did not recall speaking
7  with DeBose on the telephone. He further stated that if DeBose did call him, he would have
8  advised DeBose to fill out a CTF 304 multi-purpose form in order to be seen by a dentist for
9  a routine dental visit. For purposes of evaluating a motion for summary judgment, the court
10 accepts the non-movant DeBose's version of disputed facts as true.)

11 On December 14, 2001, DeBose was finally seen by a dentist. After examining him
12 and taking x-rays, the dentist told DeBose that the decay had spread to the root of his tooth
13 and the tooth had to be pulled. The dentist told him that the tooth could have been saved if
14 not for the seven-month delay in getting to the dentist. The decayed tooth was extracted that
15 day.

16 On January 4, 2002, DeBose filed an inmate appeal about the dental care. His inmate
17 appeal did not state that he had filed a CTF 304 multi-purpose form. His inmate appeal form
18 did blame dental assistant Moore for not signing him up for dental care. See CDC-602,
19 attached sheet A ("Moore refuse me treatment without even examining (sic) me. Mr.
20 William Moore refuse (sic) to do his job and sign me up for a scheduled appointment so that
21 I would not have had to wait 7 months to be seen by a dentist.")

22 The first level inmate appeal response stated that DeBose had improperly sought
23 routine dental care through the emergency sick call procedure. "This is at least the second
24 time that you have come to Sick Call for routine dental care (fillings) and refused to follow
25 the directives for receiving routine treatment. Dental treatment is available to all inmates
26 upon request." Complaint exhibit, 7/11/02 First Level Response, p. 1. The response then
27 explained that the inmate had to request dental treatment on a CTF 304 multi-purpose form
28 and wait for his turn for treatment. The response further explained that the sick call line was

3

for emergency treatment only and that no routine treatment was provided at sick call. The inmate appeal was "partially granted" in that "dental treatment is available and granted, providing you follow the steps outlined above." Id. at 2.

DeBose appealed to the second level, expressing his dissatisfaction with the first level inmate appeal response. The gist of his appeal to the second level was that his lost filling was not a routine dental care matter and he was annoyed that the non-dentist William Moore had turned him away without letting him see a dentist. DeBose argued that, because a nurse had filled out a pass for him to see a dentist and sent him to the dental clinic, Moore had no right to turn him away without letting him see a dentist. See Complaint exhibit at "Additional Sheet B."

The second level appeal response stated again that DeBose had improperly sought routine dental care through the emergency sick call procedure. See Complaint exhibit, 10/24/02 Second Level Response, p. 1. The second level response again explained that a CTF 304 multi-purpose form had to be filled out to request and obtain routine dental care and added that dental assistant had explained this to DeBose. The response further stated that DeBose had done this before: "In a previous appeal, you came to Sick Call requesting fillings and again in your present appeal you are requesting fillings during Sick Call. Each time, by the same DA [dental assistant] you dislike, you were informed that fillings are not provided during Sick Call. Then you were informed on each occasion how to obtain routine dental treatment. The DA was following directives from the dentists in a professional manner and you have provided no evidence otherwise." Id. at 2.

DeBose appealed to the director's level of review, expressing his dissatisfaction with the second level inmate appeal response. The gist of his appeal to the director's level was much the same as his second level appeal, except that he disputed the side issue of whether he had access to a telephone to call Dr. Sather. DeBose did not state that he had submitted the CTF 304 multi-purpose form. DeBose again argued that, because a nurse had filled out a pass for him to see a dentist and sent him to the dental clinic, Moore had no right to turn him away without letting him see a dentist. He further wrote that the regulations required that an

4

inmate whose condition did not require immediate treatment by the dentist was to be scheduled in chronological order for an appointment See Complaint exhibit at "Attached Sheet C."  DeBose wrote that he had filled out a co-payment form on May 8 that some unidentified person said was the form used to schedule appointments. Id. The third level appeal response denied relief. Young Decl., Exh. E, 6/24/03 Director's Level Response.

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims occurred in Monterey County, within the Northern District.  This court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted.) The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn

5

from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

On issues as to which the moving party bears the burden of proof at trial -- such as the qualified immunity defense in this case -- he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). He must establish the absence of a genuine issue of fact on each issue material to his affirmative defense. Id. at 1537. Once the moving party has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue of fact on the defense.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). DeBose's complaint was signed under penalty of perjury and therefore may be considered in deciding the motion for summary judgment.

## DISCUSSION

A. Sather's Motion For Summary Judgment

   1. Deliberate Indifference To Medical Needs Claim

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 102-04 (1976). To prove that the response of prison officials to a prisoner's medical needs was constitutionally deficient, the prisoner must establish (1) a serious medical need and (2) deliberate indifference to that need by prison officials. See McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards

that risk by failing to take reasonable measures to abate it. See Farmer v. Brennan, 511 U.S. 825, 837, 844 (1994). A mere difference of opinion as to which medically acceptable course of treatment should be followed does not establish deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); see also Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Where defendant doctors have chosen one course of action and a plaintiff contends that they should have chosen another course of action, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, ... and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Id.

Serious medical needs may include dental care. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (dental care important medical need of inmates); see also Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002) (plaintiffs could not prove 8th Amendment violation in class action because they "have not demonstrated that delays occurred to patients with [dental] problems so severe that delays would cause significant harm and that Defendants should have known this to be the case"; district court's finding of no 8th Amendment violation not clearly erroneous where delay for dental care was only three weeks for a hygienist and six weeks for a dentist and less than two days in the event of a dental emergency).

       a.       Serious Medical Need?

The parties do not dispute that DeBose had a medical need for dental care for his lost filling. There is no evidence, however, that the lost filling presented a dental emergency that required treatment on the same day that DeBose first reported it in the sick call line. DeBose's argument that he had a right to see and be treated by a dentist that day lacks evidentiary support. The only competent evidence on the emergency versus routine nature of a lost filling is that of the dentist Dr. Sather, who saw a lost filling as a routine dental matter.

b.      Deliberate Indifference?

The evidence is undisputed that (1) CTF had a system for requesting routine dental care, i.e., the inmate could submit a CTF 304 multi-purpose form requesting dental care and he would then be put on a list for routine dental care, (2) CTF's dental care system contemplated the use of the sick call line for dental emergencies and the waiting list for routine dental care, (3) DeBose could have reported to the sick call line for a second referral if he was experiencing a dental emergency or pain after he had been turned away on May 8, and (4) DeBose could have filed an inmate appeal at any time during the seven months he did not receive treatment. There is no evidence that the foregoing system for dental care matters was not known to Debose; indeed, the evidence supports the opposite inference. DeBose had been in the California prison system since his 1986 murder conviction and had been at CTF since 1996. See Young Decl., Exh. A. He also had received dental care in the past at CTF and had filed an inmate appeal in 1998 about a dental matter. See Young Decl., Exh. D (dental chart showing visits in 1997, 1998, 1999, and 2001, and a 602 interview on December 18, 1998).

DeBose does not raise a triable issue of fact that he filled out a CTF 304 multi-purpose form to request dental services. He argues that he filled out the "required" paperwork on May 8, but his conclusory statement is not sufficient evidence that he filled out the CTF 304 multi-purpose form, especially in light of the inmate appeal responses pointing out the failure to submit that particular form. He stated in numerous places in his inmate appeals that he filled out a single form for dental care that day, and in one place identified the form he filled out as the co-payment authorization form. See Complaint exhibit at "Attached Sheet C." He stated that someone – but he did not identify that someone as either defendant – told him that the co-payment form was the form used to schedule appointments. That was his statement after the inmate appeal response pointed out to him that he had failed to file the CTF 304 form for routine dental care.

Debose states that he told Dr. Sather that he had submitted the required form when he called to complain about the dental assistant's attitude problem and his need for dental care.

8

On DeBose's version of the facts – that he told Dr. Sather on May 8 that he submitted the right form on May 8 to obtain dental care – Dr. Sather did not act with deliberate indifference in not doing anything further with that information. A dentist would not "be aware of facts from which the inference could be drawn that a risk of serious harm exists" from a lost filling and draw the inference that he needed to step in and schedule a routine dental care appointment when the inmate said that he had not had his lost filling treated at the sick call line and had just that day submitted the required form to obtain an appointment for routine dental care. See Farmer, 511 U.S. at 837. Further, because DeBose has not provided evidence of the other dates on which he allegedly called Dr. Sather, one cannot draw any inference from the alleged inaction without knowing the dates on which the calls were made and the statements made in those calls. For example, if DeBose called Dr. Sather in the week or two after he reportedly submitted the form, there would be no reason for Dr. Sather to suspect any need to step in and do something. By further example, if DeBose called Dr. Sather in the few weeks before the care was finally provided, it could not be said that Dr. Sather caused any delay in treatment.

The evidence does not show or support an inference that Dr. Sather prevented DeBose from receiving care for his lost filling. There simply is no evidence that there would have been a seven-month delay between DeBose's first visit to the dental clinic (on May 8, 2001) and the receipt of care (on December 14, 2001) if DeBose had followed the established procedures at CTF for obtaining routine dental care. Even DeBose does not contend that he was ever told he could not have routine dental care if he submitted the request form.

What jumps out at the reader is how easy it would have been for DeBose to avoid the seven-month delay by simply filling out the right form. Instead of following the established route of submitting the CTF 304 multi-purpose form, DeBose chose a path of going straight to the top to complain to the chief dental officer about a dental assistant's attitude and to ask for dental services. The thoughts expressed by the court in Resnick v. Adams, 348 F.3d 763 (9th Cir. 2003), are quite appropriate here, even though that case involved an inmate's desire for a kosher diet and this case involves an inmate's desire for dental care. The Resnick

1 plaintiff refused to submit the application form necessary to process his request for a kosher
2 diet, choosing instead to complain by letter and refusing instructions to fill out the
3 application form.  Because the inmate had not asserted that he applied for or participated in
4 the kosher diet program, the alleged failure to provide kosher meals was irrelevant, id. at 767,
5 and the focus had to be on whether the requirement that the inmate submit an application in
6 order to receive kosher meals was by itself an unconstitutional infringement of his right to
7 free exercise of his religion, id. at 768.  The court noted that the prison had a legitimate
8 governmental interest in the orderly administration of a program that allowed prisons to
9 accommodate the needs of thousands of prisoners and that "[a]llowing inmates to make
10 requests outside this system by letters sent to various prison officials would frustrate the
11 orderly administration" of the program.  Id. at 770.  The court rejected the inmate's First
12 Amendment claim in Resnick.  Similarly, DeBose's acts in calling Dr. Sather, rather than
13 filing the CTF 304 form or even an inmate appeal, interfered with the orderly administration
14 of the dental care program.  Indeed, DeBose's conduct may actually have increased the delay
15 in dental services because, if the dentist worked a fixed number of hours per week, every
16 minute spent doing clerical work such as scheduling appointments would reduce the time he
17 spent doing actual dentistry.

18 DeBose has not established "'a genuine issue for trial'" that Dr. Sather was deliberately
19 indifferent to his need for treatment of his lost dental filling.  See Celotex, 477 U.S. at 324
20 (quoting Fed. R. Civ. P. 56(e)).  Defendant Sather therefore is entitled to summary judgment
21 in his favor on the Eighth Amendment claim.

22     2.    Qualified Immunity

23 The defense of qualified immunity protects "government officials . . . from liability
24 for civil damages insofar as their conduct does not violate clearly established statutory or
25 constitutional rights of which a reasonable person would have known."  Harlow v.
26 Fitzgerald, 457 U.S. 800, 818 (1982).  To determine whether an official is entitled to
27 qualified immunity, the court must decide whether the facts alleged show the official's
28 conduct violated a constitutional right; and, if so, whether it would be clear to a reasonable

10

officer that his conduct was unlawful in the situation he confronted. Saucier v. Katz, 533 U.S. 194, 201 (2001). The first prong is a threshold question; "if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id.

The court has concluded that the undisputed evidence fails to show a violation of DeBose's constitutional rights. There is no need to proceed to the second step of the Saucier analysis. Defendant Sather is entitled to qualified immunity as a matter of law.

B.    Discovery Motions And The Unserved Defendant

Defendant Sather filed a motion to stay discovery pending a decision on his motion for summary judgment in which he asserted entitlement to judgment as a matter of law on the defense of qualified immunity. The U.S. Supreme Court has made it abundantly clear that a district court should stay discovery until the threshold question of qualified immunity is settled. See Crawford-El v. Britton, 523 U.S. 574, 598 (1998); Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, the court GRANTS defendant's motion to stay discovery. (Docket # 24.) In light of defendant's entitlement to a stay and the decision today granting defendant's motion for summary judgment, plaintiff's motion to compel and motion for discovery are DENIED. (Docket # 18 and # 23.)

C.    Unserved Defendant

Plaintiff did not provide an address at which defendant William Moore could be served with process and the deadline by which to do so has long passed. Accordingly, defendant William Moore is dismissed from this action. This dismissal is without prejudice to plaintiff filing a new action against Moore if he ever locates him.

/ / /
/ / /
/ / /
/ / /

11

**CONCLUSION**

Defendant Sather's motion for summary judgment is GRANTED. (Docket # 10.) Defendant's motion to stay discovery is GRANTED. (Docket # 24.) Plaintiff's motion for discovery and motion to compel are DENIED. (Docket # 18 and # 23.) Judgment shall be entered in defendant Sather's favor against plaintiff and dismissing the action against defendant William Moore. The clerk shall close the file.

IT IS SO ORDERED.

Dated: March _8__, 2007

_____
Marilyn Hall Patel
United States District Judge